IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-5226 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Cassandra L. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's applications for Disability Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI"). (Dckt. #16). The Commissioner responds, (Dckt. #21), asking this Court to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 1383(c)(3). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied, and the Commissioner's motion for summary judgment to uphold the decision to deny benefits is granted.

**I.     BACKGROUND**

    **A.     Procedural History**

Claimant, who was twenty-one years old at the onset of her alleged disability, is a former server who seeks DIBs and SSI due to limitations stemming from severe post-traumatic stress

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

disorder ("PTSD"), severe anxiety disorder, pituitary tumor, back spasms with degenerative disc disease, arthritis, spinal spurs, sciatica, and knee injury. (R. 15, 93-94); (*see* Dckt. #16 at 1). Her application was denied initially on December 23, 2019, and upon reconsideration on August 31, 2020. (R. 67-88, 129-37). Claimant filed a timely request for a hearing, which was held via telephone on January 19, 2021. (R. 36-66). Claimant, who appeared with counsel, testified at the hearing as did a vocational expert ("VE"). (*Id.*). On February 25, 2021, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-35). Claimant timely requested review with the Appeals Council, who denied review on July 29, 2021, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Social Security Administration Standard to Recover Benefits

In order to qualify for disability benefits, a claimant must demonstrate that she is disabled. An individual does so by showing that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If the claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), which defines her exertional and non-exertional capacity to work despite the limitations imposed by her impairments. The SSA then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id*. If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if she can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's requests for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 1, 2010. (R. 17). At step two, the ALJ determined Claimant had the severe impairments of degenerative disc disease of the lumbar spine, anxiety, PTSD, opioid use, borderline personality disorder, and obesity. (R. 18). Next, at step three, the ALJ found that Claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations. (*Id*.). Specifically, the ALJ considered the following listings: (1) 1.04 ("Disorders of the spine"); (2) 12.06 ("Anxiety and obsessive-compulsive disorders"); (3) 12.08 ("Personality and impulse-control disorders"); (4) 12.15 ("Trauma and stressor related disorders"); and (5) SSR 19-2p as it relates to Claimant's obesity. (R. 18-19).

Before turning to step four, the ALJ concluded that Claimant had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequent climbing, stooping, kneeling, crouching, and crawling. She lacks the ability to carry out complex instructions because of moderate limitations in concentration, but retains the sustained concentration necessary for simple work of a routine type because of moderate difficulties with social functioning, may only engage in brief contact with supervisors and occasional brief and superficial contact with the general public. She can respond to occasional changes and should not be expected to set goals or make plans independently of others.

(R. 21). At step four, the ALJ concluded that Claimant could not perform her past work as a server. (R. 28). Finally, the ALJ found at step five that jobs existed in significant numbers in the national economy that Claimant could perform, including roles as a marker (97,400 nationally-available jobs); hand bander (10,000 jobs); and small products assembler (290,000 jobs). (R. 29). Accordingly, the ALJ found Claimant was not disabled from December 1, 2010, through the date of the decision, March 2, 2021. (R. 30).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant urges this Court to reverse and remand the ALJ's decision to deny her benefits, arguing that: (1) the ALJ's evaluation of treating Advanced Practice Nurse ("APN") Conrad Duncker's opinion is not supported by substantial evidence; and (2) the ALJ improperly discredited her subjective statements regarding her limitations. (Dckt. #16 at 2-14).[2]

#### A. The ALJ Adequately Evaluated APN Duncker's Opinion

As of March 27, 2017, ALJs are no longer mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a); *see also Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D.Ill. Mar. 28, 2023). Instead, ALJs will consider "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D.Ill. Mar. 29, 2023) (citing 20 C.F.R. §404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.'" *Bethany G.*, 2023 WL 2683501, at *3, *quoting Ray v. Saul*, 861 Fed.Appx. 102, 105 (7th Cir. 2021) (citations omitted); 20 C.F.R. §404.1520c(b)(2).

---

[2] Claimant raised a third argument alleging that the ALJ's decision was constitutionally defective, (Dckt. #16 at 14). However, as Claimant withdrew this argument in her reply brief, (Dckt. #25 at 10 n.4), the Court need not address the substance of the argument in this Opinion.

Here, APN Duncker issued a February 13, 2020 mental RFC statement in which he opined that Claimant, even with extensive limitations, would miss more than six workdays per month and be "off-task more than thirty percent of each workday." (R. 1140-41). Moreover, according to APN Duncker, Claimant could not "be reasonably expected to work" given her impairments. (*Id.*).

The ALJ found APN Duncker's opinion that Claimant would miss more than six days of work per month and would be markedly impaired by her mental impairments unpersuasive:

> APN Duncker indicated he has provided psychiatric services for the claimant since October 7, 2019 to treat her diagnoses of PTSD and major depressive disorder, recurrent in full remission. He opined that the claimant would be off task more than 30% of the workday due to mental/physical limitations taken in combination. He opined that she could likely be absent more than 6 days per month. APN Duncker opined the claimant could not reasonably be expected to work 8 hours per day, 5 days per week in her current mental state . . . [and] had generally marked limitations overall in the four areas of mental functioning.
>
> APN Duncker is not a treating physician and as such, the undersigned does not find this acceptable for diagnosis, but he is a medical professional with knowledge of the claimant's functioning over a longitudinal period.[3] APN Dun[c]ker's opinion is not consistent with his longitudinal progress notes and not supported by the medical evidence of record. . . . In addition, his opinion is internally inconsistent as he opines the claimant could understand, remember and carry out short and simple instructions, and make simple work-related decisions and ask simple questions and request assistance. Further, he indicated she could respond appropriately to changes in the work setting, travel to unfamiliar places, maintain socially appropriate behavior, and adhere to basic standard[s] of neatness and cleanliness. Such abilities appear to indicate that the claimant is not as limited as opined by APN [Duncker].

(R. 26-27).

---

[3] The Court notes that APN Duncker also lists Psychiatric-Mental Health Nurse Practitioner ("PMHNP"), Qualified Mental Health Professional ("QMHP"), Registered Practical Nurse ("RPN"), and Ph.D. as additional or alternate medical certifications in his title at some points within the record. (E.g., R. 1113). However, as Claimant points out, "the record is silent whether he was a psychologist or had a Ph.D. in another field," (Dckt. #16 at 2 n.2), so the Court refers to him with the overlapping designation of APN as was consistent with the record.

Claimant now alleges error in that the ALJ "erred by failing to discuss specific treatment records that were consistent or inconsistent with Mr. Duncker's opinion." (Dckt. #16 at 3). According to Claimant, such error requires remand because "the weight of the evidence strongly supported Mr. Duncker's opinion as to marked limitations in sustaining concentration and memory as well as social interactions." (*Id*.). For the reasons stated below, Claimant's argument lacks merit because substantial evidence supports the ALJ's review of the medical opinions.

First, the ALJ thoroughly discussed Claimant's history of mental illness – with extensive citation to a voluminous record – weighing for and against a finding of marked impairment from her PTSD, anxiety, and depression. For example, the ALJ noted Claimant's "significant history of treatment in adolescence for heavy substance abuse, PTSD, and anxiety," history of extensive and various mental health diagnoses and substance abuse treatment prior to 2012, and ongoing panic attacks as of 2015. (R. 22-23). The ALJ cited records indicating Claimant's anxiety continued into 2020, but that records also showed mental health progress in other areas such as improved mood and sleep patterns. (R. 22). She found those records, taken in totality, did not support APN Duncker's opinion because they often showed unremarkable mental health findings within normal limits. (R. 22-24 (citing, *e.g.*, R. 1043-47, 1058-60, 1073, 1077, 1084, 1090-92, 1103-04)); *see Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (ALJ justified in discounting medical opinion based on the weight of the medical record). "The ALJ also permissibly noted that [Claimant] did not require more intensive care" in discounting APN Duncker's opinion. *Diaz v. Kijakazi*, No. 22-2904, 2023 WL 5275905, at *3 (7th Cir. Aug. 16, 2023) (citing SSR 16-3, 2017 WL 5180304 (Oct. 25, 2017)).

Second, the ALJ referenced APN Duncker's own treatment notes that contradicted his more dire opinion. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline

8

to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes"); *Fair v. Saul*, 853 Fed.Appx. 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions"). For example, the ALJ pointed out that APN Duncker recorded "unremarkable" mental health status reports in from a February 2020 visit with Claimant and that, on November 10, 2020, Claimant self-reported to APN Duncker that her "mood and anxiety have been 'pretty well managed'" and that her overall condition improved. (R. 24 (citing R. 1084-86, 1205)). The ALJ permissibly referenced APN Duncker's notes in discounting his opinion. (R. 26); *Fair*, 853 Fed.Appx. at 21.

Third, as courts of this Circuit have consistently found, the ALJ justifiably pointed to the internal inconsistencies within APN Duncker's opinion in discounting its persuasiveness. 20 C.F.R. §404.1520c(a), (c); *see Lehouillier v. Colvin*, 633 Fed.Appx. 328, 334 (7th Cir. 2015) ("internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion so long as the ALJ provides an adequate explanation."); *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (same); *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004). Specifically, the ALJ contrasted APN Duncker's opinion that Claimant could handle simple instructions and work-related decisions without assistance as well as adapt to changes in her work setting while maintaining appropriate behavior against his more dire statement that her mental impairments were disabling. (R. 26-27). The ALJ was justified in finding that these inconsistent statements undercut APN Duncker's opinion's overall persuasiveness. *Lehouillier*, 328 Fed.Appx. at 334.

Fourth, the ALJ relied on state agency physicians Jeanne Yakin, Ph.D, and Donna Hudspeth, Psy.D., who determined Claimant had moderate limitations in each of the four mental functioning areas. (R. 26 (citing R. 80, 103)). The ALJ also discussed the examination

9

conducted by consultative psychologist Michael Ingersoll's, Psy.D., who recorded Claimant's average, age-appropriate cognition with no gross cognitive defects. (R. 20 (citing R. 1045-46)); *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("the sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically.") (citing *Jeske v. Saul*, 955 F.3d 583 (7th Cir. 2020)); *see Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant"). The ALJ was permitted to discount APN Duncker's opinion where it was inconsistent with the opinions of three other consultative and reviewing physicians. *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("if the treating physician's opinion is inconsistent with the consulting physician's opinion, [or] internally inconsistent," an ALJ can discount it). The ALJ was also justified in citing to the fact that APN Duncker "is not a treating physician" as another reason to afford his opinion less weight. (R. 26); *see* 20 C.F.R. §404.1520c(c)(3)-(4).

      Notwithstanding the ALJ's thorough review of the record, Claimant asserts that she erred by not considering additional pieces of evidence when assessing APN Duncker's opinion. (Dckt. #16 at 3). However, the Seventh Circuit has made clear that the ALJ was not required to "discuss every piece of record evidence" so long as she does not "ignore[e] an entire line of evidence that supports a finding of disability." *Deborah M.*, 994 F.3d 785, 788 (7th Cir. 2021) (collecting cases). The ALJ did not ignore lines of evidence regarding Claimant's alleged disabilities. Rather, the ALJ cited to positive and negative treatment notes, as well as the consistent use of medication to treat Claimant's symptoms despite exacerbation of her condition due to life stressors. Indeed, treatment notes show that Claimant consistently advised her treating sources that medication helped her mental state. (R. 24); (*see* R. 1097-1113). The ALJ

10

fulfilled her obligation to review the full scope of Claimant's mental health treatment with particular focus on 2019 and 2020. (R. 20-24); *See Karr*, 989 F.3d at 512.

Finally, to the extent that the ALJ did not explicitly reference the citations Claimant asks this Court to now consider, "the ALJ's omission of some evidence is excusable when she relies on the medical opinions of experts who did consider that evidence," as the ALJ did here. *See Ramos v. Kijakazi*, No. 22-2899, 2023 WL 4554539, at *3 (7th Cir. July 17, 2023) (citations omitted). Therefore, Claimant's reliance on additional record evidence that the ALJ did not consider in support of argument for remand amounts to nothing more than an invitation for this Court to weigh the evidence anew, which this Court cannot do. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020); *Clifford*, 227 F.3d at 869 (The Court cannot "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner.").

In short, the ALJ contrasted the opinion of an advanced practice nurse against the opinions of two state agency psychologists and a third consulting psychologist and found that the opinions of the psychologists – which were supported by the treatment record as a whole – were more persuasive than the opinion of the nurse. The ALJ's finding in this regard is supported by substantial evidence. *See, e.g.*, *Baptist*, 74 F.4th at 444; *Ketelboeter*, 550 F.3d at 625.

**B.  The ALJ's assessment Claimant's subjective statements regarding her symptoms is supported by substantial evidence.**

Next, Claimant argues that the ALJ improperly assessed Claimant's subjective statements of her symptoms. (Dckt. #16 at 10-14). Again, the Court disagrees.

Any challenge to the ALJ's symptom evaluation faces a high bar, and the Court "will not overturn the ALJ's credibility finding unless it is 'patently wrong.'" *Lisa C. v. Kijakazi*, No. 20-cv-5173, 2023 WL 3436400, at *11 (N.D.Ill. May 12, 2023), *quoting Elder*, 529 F.3d at 413-14.

11

To show that the ALJ's evaluation is patently wrong, a claimant must demonstrate that the evaluation lacks "any explanation or support." *Elder*, 529 F.3d at 413-14; *Horr v. Berryhill*, 743 Fed.Appx. 16, 20 (7th Cir. 2018). SSR 16-3p provides guidance to ALJs for assessing a claimant's symptoms via a two-step process whereby the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p, 2017 WL 5180304, at *3; *Wilder*, 22 F.4th at 654. In making this evaluation, the ALJ should consider the entire case record, along with (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and side effects of medication; (5) treatment other than medication; (6) any measures other than treatment an individual uses to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7; 20 C.F.R. §416.929.

Here, the ALJ provided a thorough review of Claimant's medical history, subjective reports at medical appointments, and hearing testimony, (R. 22-25), and determined that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, albeit not to the extent that she alleged. (R. 22, 25). However, the ALJ further found, based on her review of the record, that Claimant's "statements about the intensity, persistence, and limiting effects of her symptoms [] are inconsistent because the evidence demonstrates that [Claimant's] impairments do not preclude her from working entirely." (R. 25).

In support of this conclusion, the ALJ found that: (1) although Claimant's history of anxiety and panic attacks were apparent in the medical records, her panic attacks "generally occurred during periods of abnormal stress but were not durational;" (2) Claimant's symptoms improved when she consistently attended mental health treatment and used prescribed psychotropic medication; (3) Claimant's testimony that she experienced housing instability was not reflected in treatment notes; (4) no evidence indicated Claimant required hospitalization or more extreme treatment than medication for her conditions; (5) Claimant was observed by mental health professionals to have average, age appropriate cognition with no gross cognitive defects, and a consultative psychological examiner noted her thought process was clear, logical, goal directed, with no evidence of thought disturbance or psychosis; and (6) Claimant was able to grocery shop and drive on a limited basis.[4] (R. 20-26 (citing to Claimant's treatment records). The regulations and precedent support the ALJ's reliance on these reasons in discounting Claimant's subjective statements. *See* 20 C.F.R. §404.1529(c)(3); SSR 16-3p, 2017 WL 518004, at *7; *Prill v. Kijakazi*, 23 F.4th 738, 738 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Claimant argues that the ALJ erred in her reliance on Claimant's symptoms *not* worsening over time, inconsistencies between her testimony and the record, and her daily activities. (Dckt. #16 at 11-13). Even accepting Claimant's arguments at face value, the ALJ's decision to not fully accept Claimant's subjective complaints regarding her symptoms was not patently wrong because the ALJ presented myriad other reasons – mentioned in the foregoing

---

[4] Claimant testified – and records indicate – that she was involved in at least two traffic accidents as a result of her experiencing panic attacks. (R. 20, 296, 1194-96).

paragraph – that were adequately supported by the record. *See, e.g.*, *Schrank v. Saul*, 843 Fed.Appx. 786, 789 (7th Cir. 2021) ("Even if the ALJ's other reason for discounting Schrank's testimony . . . was not substantiated by the record, we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding."); *see also Matthews v. Saul*, 833 Fed.Appx. 432, 437 (7th Cir. 2020) (finding that the ALJ's partially adverse credibility finding was not patently wrong even though the ALJ's "reasoning was not airtight.").

Claimant also alleges that the ALJ would have found Claimant disabled had she analyzed how Claimant's impairments impacted her ability to complete basic daily tasks in a different manner. (Dckt. #16 at 14). As stated *supra*, at Section III(A), the Court cannot re-weigh the evidence as Claimant requests. *Peeters*, 975 F.3d at 641; *Clifford*, 227 F.3d at 869. Even so, the ALJ did not completely disregard Claimant's complaints of her symptoms arising from her impairments, as her RFC provided significant non-exertional limitations in reliance on the state consultative reviewing psychologists. (R. 21, 84-86, 108-10).

For these reasons, the Court finds the ALJ adequately assessed Claimant's subjective statements of her symptoms with "specific reasons that are supported by the record." *Elder*, 529 F.3d at 413-14; *Skarbek*, 390 F.3d at 505; *Lewis*, 236 F.3d at 511.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the Commissioner's decision, (Dckt. #16), is denied and the Commissioner's motion for summary judgment, (Dckt. #21), is granted. The decision of the ALJ is affirmed.

**Date: September 8, 2023**

**Jeffrey I. Cummings
United States Magistrate Judge**